**Amy F. SANDGRUND, Plaintiff,**

v.

**U.S. SECURITIES AND EXCHANGE COMMISSION, Defendant.**

**Civil Action No. 01–01431 (RWR/JMF).**

United States District Court,
District of Columbia.

Aug. 23, 2002.

Warren L. Dennis, Amybeth Garcia–Bokor, Susan Brinkerhoff, Proskauer Rose, LLP, Washington, DC, for plaintiff.

Karen J. Shimp, Office of the General Counsel, Washington, DC, for defendant.

## MEMORANDUM OPINION

FACCIOLA, United States Magistrate Judge.

This matter was referred to me by Judge Roberts. I herein resolve plaintiff's *Motion for a Supplemental Vaughn Index* [# 10]. For the reasons stated below, I find that defendant's *Vaughn* index adequately describes some, but not all, of the nature of the documents withheld. Therefore, plaintiff's motion will be denied in part and granted in part.

## BACKGROUND

Amy Sandgrund, ("Sandgrund" or "Plaintiff") brings this suit under the Freedom of Information Act ("FOIA").[1] On November 2, 2000, Sandgrund submitted a request for documents held by the United States Securities and Exchange Commission ("Commission" or "Defendant"). On November 24, 2000, defendant

denied plaintiff's request, claiming that the documents responsive to her request were exempt under exemptions 7(A) and 17 C.F.R.200.80(b)(7)(i)(A) as "records or information compiled for law enforcement purposes," the release of which "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C.A. 552(b)(7)(A). The Commission asserted other FOIA exemptions.[2]

On February 28, 2001, plaintiff again sought the documents listed in her original request, and was rebuffed by defendant on the same grounds. On March 20, 2001, plaintiff appealed and on April 9, 2001, defendant denied plaintiff's appeal claiming that the application of exemption 7(A) was still appropriate because disclosure could reasonably be expected to interfere with its ongoing enforcement proceedings. On June 27, 2001, plaintiff brought this action seeking to enjoin defendant from withholding the requested documents.

The documents in question were originally gathered in connection with an investigation entitled *In the Matter of Health Professionals, Inc.,* File No. HO–2641 ("HPI"),[3] where the Commission suspected unusual trading of the HPI stock. Defendant claims that its investigations quickly led to D.H. Blair ("Blair") and others as being responsible for virtually all the trading of HPI. *Defendant's Motion for Summary Judgment* ("Mot.Sum. J.") at 3. During the HPI investigations, the Commission developed evidence implicating Blair and others in possible securities law

---

1. 5 U.S.C.A. § 552(a) *et seq* (1996).

2. Defendant asserts exemptions 2 (documents related solely to the internal personnel rules and practices of an agency), 3 (documents specifically exempted from disclosure by statute), 4 (privileged and confidential trade secretes and commercial or financial information), 5 (attorney client, deliberative process, and/or workproduct privileged materials),

7(C) (law enforcement records that could reasonably be expected to constitute an unwarranted invasion of personal privacy), and/or 8 (examination, operating, or condition reports).

3. The Commission refers to this matter as the "A.R. Baron investigation," but for the purposes of this opinion, "HPI" will be used to identify this investigation. Mot. Sum. J. at 2.

violations. In particular, the evidence indicated that Blair may have been complicit with HPI in committing these violations. Consequently, the Commission opened a separate investigation against Blair.

In the present motion, plaintiff seeks a supplemental *Vaughn*[4] index of documents responsive to its FOIA request.[5] Plaintiff claims that defendant submitted affidavits[6] describing the withheld documents in extremely broad, categorical terms,[7] thereby hampering her ability to substantively evaluate the claimed FOIA exemption. Consequently, according to plaintiff, defendant should be required to further identify the documents that corresponds to Categories A, B, C, and F[8] of defendant's *Vaughn* index. In addition, plaintiff seeks a more detailed statement justifying each of defendant's refusals to release the requested records.

## ANALYSIS

### Applicable Standards

■ The purpose of the *Vaughn* index is to identify the documents in dispute and to set forth the government's explanation of why it is withholding each particular document. The index can be useful to the plaintiff and to the court, as it precludes the need for *in camera* inspection of the documents. But, in order to advance the court's review process, the index must be detailed enough to permit "meaningful review" by the court. *Students Against Genocide (SAGE) v. Department of State*, 50 F.Supp.2d 20, 26 (D.D.C.1999) (*citing King v. U.S. Dept. of Justice*, 830 F.2d 210, 217 (D.C.Cir.1987)); *See also Greenberg v. U.S. Dept. of Treasury*, 10 F.Supp.2d 3, 14 (D.D.C.1998).

In assessing the adequacy of a *Vaughn* Index, it is the function served, rather than the form, that is crucial. *Ferranti v. Bureau of Alcohol, Tobacco and Firearms*, 177 F.Supp.2d 41, 45 (D.D.C.2001); *See also Gallant v. NLRB*, 26 F.3d 168, 173 (D.C.Cir.1994) ("the materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege"). An agency may satisfy its *Vaughn* requirements by taking "a generic approach, grouping documents into relevant categories that are sufficiently distinct to allow a court to grasp 'how each category of . . . documents, if disclosed, would interfere with the investigation.'" *Bevis v. Department of State*, 801 F.2d 1386, 1389 (D.C.Cir.1986).

■ Although, agencies may rely on the declarations of its officials creating its

---

**4.** *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

**5.** This opinion only addresses the sufficiency of the Commission's *Vaughn* index, and not whether the documents have been properly withheld pursuant to the claimed FOIA exemptions.

**6.** Defendant's *Vaughn* index is comprised of declarations by Ernesto Amparo ("Amparo") and Louis Randazzo ("Randazzo"), who are Senior Counsel in the Division of Enforcement at the Commission. Both Amparo and Randazzo claim to have participated in the document-by-document review of the files at issue here. Amparo was the principal attorney responsible for the HPI investigations while Randazzo is principally responsible for the ongoing investigation of Blair.

**7.** The Commission grouped the potentially responsive documents as follows: A) Documents Produced by Third Parties, B) Commission Correspondence with Third Parties, C) Testimony Transcripts, D) Attorney Notes and Trial Preparation Materials, E) Memoranda by Commission Staff, and F) Correspondence between the Commission and Self–Regulatory Organizations ("SROs"). Amparo Decl. at 4–7.

**8.** Sandgrund does not dispute the withholding of documents in categories "D" and "E."

*Vaughn* index, "the declarations must be clear, specific and adequately detailed; they must describe the withheld information and the reason for nondisclosure in a factual and non-conclusory manner." *Ferranti v. Bureau of Alcohol, Tobacco and Firearms*, 177 F.Supp.2d at 45.

In *Bevis*, the court explained that "the hallmark of an acceptable ... category is [that which] allows the court to trace a rational link between the nature of the document and the alleged likely interference." 801 F.2d at 1389. Examples of categories that suffice are those identified as "the identities of possible witnesses and informants," "report on the location and viability of potential evidence," and "polygraph reports." *Id.* at 1390. On the other hand, examples of categories that do not suffice are those identified merely as "teletypes," "airtels," or "letters," since they provide no basis for judicial assessment of the claimed potential interference. *Id.* Essentially, the agency's index must not be drawn in conclusory terms that would frustrate or impede the court's ability to conduct a *de novo* review. *Carter v. United States Dep't of Commerce*, 830 F.2d 388, 393 (D.C.Cir.1987). *See also Allen v. CIA*, 636 F.2d 1287, 1298 (D.C.Cir.1980). Ultimately, the description and explanation the agency offers should reveal as much detail as possible as to the nature of the document, without actually disclosing information that deserves protection. *King v. Dept. of Justice*, 830 F.2d at 221–223.

Here, the affidavits submitted by the Commission proceeded on a categorical basis. As noted earlier, the Commission grouped the potentially responsive documents as follows: A) Documents Produced by Third Parties, B) Commission Correspondence with Third Parties, C) Testimony Transcripts, D) Attorney Notes and Trial Preparation Materials, E) Memoranda by Commission Staff, and F) Correspondence between the Commission and Self Regulatory Organizations ("SROs"). Amparo Decl. at 4–7.

I will review the sufficiency of the disputed categories (A, B, C and F) separately to determine whether they are detailed enough to permit "meaningful review," allowing this court to "trace a rational link between the nature of the document and the alleged likely interference." *Bevis v. Department of State*, 801 F.2d at 1390. *Category "A" Documents Produced By Third Parties*

Category A is subdivided into 28 different types of documents that were produced by third parties.

■ In describing any individual document or file of documents, there is a continuum of specificity. At the specific end, a description might be "Memorandum to File Re: Call from Jones re: losses in his account." At the other end, a description of the same document would be "Memorandum." A description of all such memoranda collected in a file would range from the specific "Memoranda to File re: calls from customers" to the least specific "Memoranda." The teaching of *Bevis* is that if the agency insists upon grouping sets of similar documents into categories, the categories must be specific and clear enough to permit the instant identification of all documents within the category with sufficient particularity to know what they are and why they are exempt.

I have reviewed the 28 categories in Category A and I find that they fall along this continuum. In several instances, it is instantaneously clear what the category contains while in other instances the description is too broad or generic to meet the government's *Vaughn* obligation. To keep my analysis from being as generalized as some of the offending categories, I list below the categories that I have found wanting and the supplementation I am re-

quiring. "None" indicates, of course, that
no supplementation is required.

| No. | Description | Supplementation Required |
|-----|-------------|--------------------------|
| 1 | Brokerage account opening forms and account statements | State whether these were accounting forms and statements of accounts received by third parties from D.H. Blair or A.R. Baron. |
| 2 | Bank account records | State whose bank account records, brokerages being investigated, brokerage customers or others. |
| 3 | Broker commission forms | State what brokerage or broker and whether sent to third parties from D.H. Blair or A.R. Baron. |
| 4 | Internal and external business correspondence | State what is the nature of the correspondence and from whom it originated. State generically the topics of such correspondence. If necessary, break down the different kinds of correspondence into narrower categories. |
| 5 | Checks and other payments records | State drawer and payer of checks generically (E.g., from customer to brokerage or from brokerage to customer). Identify more specifically "other payment records." Does it include credit cards, letters of credit or other ways of transmitting funds, including electronic bank transfers? |
| 6 | Confirmation of trade error reports | None. |
| 7 | Corporate documents (articles of incorporation) | State relations of documents to investments made by third parties or brokerage customers. Are these the documents created by corporations in which third parties made investments? |
| 8 | Customer lists | State whose customers. |
| 9 | Customer specialist account statements | None. |
| 10 | Funds or securities transfer documents | None |
| 11 | Internal Revenue Service filings | State by category, type or generic description who made the filings with the Internal Revenue Service. |
| 12 | Margin call documentation | State more specifically the nature of the documentation. |
| 13 | Order tickets and client confirmations | None. |
| 14 | Personal (not corporate) calendars, rolodexes, journals, diaries and notebooks | None. |
| 15 | Personnel records | State the name and nature of the organization that created these records. |
| 16 | Posting records | Describe the information posted. |
| 17 | Press releases | Indicate by whom issued. |
| 18 | Prospectuses and other marketing materials | State by whom published. |

| 19 | Reports of brokers who made margin call extensions | None. |
|---|---|---|
| 20 | Filings with the Commission | State by whom the filings were made. |
| 21 | Pleadings and order from National Association of Securities Dealers arbitration proceedings, Commission administrative proceedings and court cases | None. |
| 22 | Stock certificates | None. |
| 23 | Stock record reports | State by whom the reports were created and maintained and what they indicate. |
| 24 | Telephone records | State whether they include messages of callers leaving requests for call back or memoranda to file concerning calls from third parties. |
| 25 | Securities trade records | State by whom trades were made or on whose account. |
| 26 | News articles | None. |
| 28 | Trading Account Inventories | State generically by category or type whose accounts these are. |
| 27 | IPO allocations | State nature of allocation and relation to third party accounts |

## Category "B" Commission Correspondence with Third Parties

Category B includes subpoenas sent to third parties, and correspondence with potentially aggrieved investors. Amparo Decl. at 5. Certainly, the description of "subpoenas sent to third parties" is sufficient. The only possible supplementation is to disclose the names of the individuals subpoenaed and documents requested in the subpoena.

On the other hand, as was true of category number 4, I find the phrase "correspondence with potentially aggrieved investors" is too broad or generic. I will again require the Commission to state more specifically the nature of the correspondence and the topics covered, and to break down the correspondence into narrower categories. The Commission should specifically state whether the "potentially aggrieved" investors made complaints to the Commission about A.R. Baron or D.H. Blair.

## Category "C" Testimony Transcripts

Category C includes testimony transcripts taken by the Commission investigative staff as part of the HPI investigation. Amparo Decl. at 5. Here, the only possible supplementation would be to disclose the name of the individuals testifying. Accordingly, plaintiff's request for a supplemental *Vaughn* index will be denied as it relates to category C.

## Category "F" Correspondence between the Commission and Self Regulatory Organizations

Finally, the Commission contends that category F includes requests for information sent by the Commission to the New York Stock Exchange or the NASD, and

other correspondence with these groups in furtherance of the Commission's investigation. Amparo Decl. at 6. These documents also include reports and records from the SROs either released to, or generated for, the Commission in response to its request. *Id.*

Again, I find the descriptions too broad and generic. I will require the Commission to describe with more particularity the kind of information it sought and received from the SRO's. As to the phrase "other correspondence," I will again require the Commission to state more specifically the nature of the correspondence and the topics covered, and to break down the correspondence into narrower categories.

## ORDER

In accordance with the above Memorandum Opinion, it is hereby,

**ORDERED** that plaintiff's *Motion for a Supplemental Vaughn Index* [# 10] is **DENIED** in part and **GRANTED** in part.

**SO ORDERED.**